# SUPREME COURT.

## WILLIAM K. KITCHEN agt. ALBERT L. CONKLIN *et al.*

*Claims upon insurance funds in the hands of a receiver — by various creditors — their priority determined.*

Creditors of an insolvent insurance company claimed preference, in payment from the fund in the hands of the receiver to whom they had been paid over by the state superintendent, as follows :

1. R. P., who subscribed for stock on the formation of the company and paid his subscription and never received any stock.
2. Holders of claims for death losses.
3. The assignees of claims for death losses.
4. The claims of those who have advanced money to pay the losses incurred upon particular policies, and who appear upon the books of the company as credited with so much money to be applied towards the payment of a loss incurred upon a particular policy.
5. The claims of judgment creditors.
6. The claims of general creditors.
7. A claim by the landlord of the premises occupied by the company.

*Held*, that the holders for claims for death losses, and the holders of assignments of such claims, are to be first paid by the receiver, and that the balance remaining in his hands to be divided pro rata among all the other creditors.

*Special Term, February*, 1874.

VAN BRUNT, *J.* — The receiver in this action has in his hands the sum of about $40,000, being moneys or the proceeds of securities transferred to him by the superintendent of the insurance department of the state of New York, the said securities having, pursuant to law, been deposited by the Hercules Mutual Life Insurance Company with said superintendent as security for the policyholders in such corporation.

Kitchen agt. Conklin.

Claims to an amount largely exceeding the amount of assets in the hands of the receiver have been presented for payment, and he has brought this action to obtain the instruction of the court as to which of these claims, if any, should have a preference in the distribution of the funds in his hands. These claims may be classified as follows:

1. The claim of Raymon Palanca, who subscribed for stock upon the formation of the company and paid his subscription but never having received any stock.

2. The claims of holders of claims for death losses.

3. The claim of the assignees of claims for death losses.

4. The claims of those who have advanced money to pay the losses incurred upon particular policies, and who appear upon the books of the company as credited with so much money to be applied towards the payment of a loss incurred upon a particular policy.

5. The claims of judgment creditors.

6. The claims of general creditors.

I do not see how Mr. Palanca has any legal claim for a preference.

He paid his money for the stock. He did not get his stock, and then allowed his money to remain in the hands of the company for three or four years, without any attempt to collect it or demand it back. It is claimed that this money helped to create the fund now in court. There is no evidence of that fact. There is no evidence for what purpose it was applied, and even if there was it could not alter the question, because, by leaving the money for so long a period in the hands of the company, and allowing them to mix it with their own funds, he merely became an ordinary creditor. If he desired to assert any specific claim upon this money he should have done so promptly, and he cannot claim, at this late day, any other or greater rights than a general creditor.

We next come to consider the claims of holders of claims for death losses. The moneys now in the hands of the receiver are such as have been received from the superintendent of the

insurance department; they having been there deposited to fulfill the requirements of the law, as a security to policyholders. The whole object of the law in the creation of this fund is to secure policyholders. No other persons are mentioned in the statute, and it is evidently the intent of the statute that this fund should be first applied to the payment of such claims, and in fact a considerable amount of the funds received from the insurance department have been applied, under the direction of the court, to a reinsuring of the outstanding risks of the company. It seems to me, therefore, that policyholders have a first claim upon this fund.

The third class of claims is that of those who are the assignees of claims for death losses.

I can see no reason why the assignee of a death loss should not have the same claim upon the fund as the original holder, and none was suggested upon the hearing of this cause.

The fourth class of claims is that of those who have advanced money to enable the company to pay particular death losses, and they claim to be somehow subrogated to the rights of the policyholders. Whatever might have been the case if they had paid the loss it is not necessary to discuss here, because due only to the claimants. The fact was, that they only advanced money to the company to enable it to pay claims made upon it, and the mere fact that the money was borrowed for a particular purpose does not change the question. The debt was paid by the party who owed it, and it became thereby extinguished, and it cannot be revived. They stand in no better position than the other creditors who have advanced money to the company.

The fifth class of claims are those of judgment creditors.

Some of these creditors claim a lien because of an attempted levy upon the securities in the hands of the superintendent of insurance. I am unable to see how any lien could be thus acquired, because no levy was made; neither could such a levy be made.

The funds are in the hands of the state in trust for the

policyholders, and they so remain until all claims of policyholders are satisfied, and when that is done the receiver takes the balance for the benefit of all the creditors. It might just as well be argued that where a receiver is appointed and has funds in his hands, that judgments should be paid according to their priority. The very object of the appointment of a receiver is to secure equality of distribution, and nothing except an actual levy under an execution or attachment can be superior to his title.

A claim is made by the landlord of the premises occupied by the company. I am unable to see on what principle he can claim any preference.

The result, therefore, of the foregoing views is as follows:

That the holders of claims for death losses and the holders of assignments of such claims are to be first paid by the receiver, and that the balance remaining in his hands is to be divided *pro rata* among all the other creditors.